The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zienoff presiding. Good afternoon everyone. This is case number 4-230261, People of the State of Illinois v. Jill A. Dillon. Good afternoon, counsel. Would counsel for the appellant identify herself for the record, please? Yes, my name is Adrienne Sloan. I'm here on behalf of Jill Dillon. Thank you. And would counsel for the appellate identify himself for the record, please? This is David Robinson for the Appellate Prosecutor's Office with the 7-11 student. This is Yutai Chou, 7-11 student on behalf of State's Attorney Appellate Prosecutor. And it's pronounced, I'm sorry, Your Honor, it's pronounced Mr. Chou. Thank you. All right. Counsel for the appellant, you may begin your argument now. Thank you. Good afternoon, Your Honors. Again, my name is Adrienne Sloan. I'm an attorney with the Office of the State Appellate Defender and my client is Jill Dillon. Jill Dillon was not properly admonished under Supreme Court Rule 402 prior to pleading guilty to her charges. For that reason, her plea was not voluntary and she should be allowed to withdraw it and go to trial. The court in Dillon's case did not advise Dillon of the possibility that she could be restitution, which according to our Supreme Court and People v. Snyder does constitute non-substantial compliance with Illinois Supreme Court Rule 402. Thus, as in Snyder, Dillon should be allowed to withdraw her plea. Ms. Sloan, may I ask whether there really is no relevance to the error unless restitution was imposed. Is that fair? Well, restitution was but if it hadn't been, it would have been a moot point whether she was admonished about it, correct? Well, I think that what's important under Rule 402 is that an individual is fully advised of all possible consequences of her plea of guilty. So, in this case, it is, of course, very important that she know she would be required, that she might be required to pay restitution because she was required to pay restitution. I agree that it's less important if restitution is not imposed. My point is simply that when the two parties step up and stipulate that there will be an order for 1500 in restitution, that seems to be, if anything, invited error. Is that something that we would lay out as trial court error or invited error? So, I think that there's two with Rule 402 and the second is what happened at sentencing. And the reason that we have Rule 402, of course, is to ensure that trial courts give the individuals proper admonishments prior to pleading guilty so that they're advised of all the possible consequences of their plea. Here, we don't have that. We don't know that Jill Dillon, before she pled guilty, before she assented into pleading guilty to these charges, that she knew restitution was possible. So, yes, there was mention on the record at the sentencing hearing that it was agreed between the parties. We don't know because there were not proper 402 admonishments that prior to sentencing, prior to entering into that guilty plea, she was aware of restitution and that means her plea was involuntary. So, in Snyder, the trial court's statement did not extend to fines or restitution. In this case, the trial court did advise that she could face up to $25,000 in fines. And some of the cases, like Thompson and Patero, say that if the restitution award is within the range of that financial fine, that there's not prejudice as a result of the defective admonition. Tell me what you think about that. I think that there certainly is prejudice there, however, because restitution differs from fines or fees in a pivotal way. And that way is before imposing fines or fees upon Dillon, the court was required to consider her ability to pay, her financial means. Whereas restitution is not imposed keeping in mind the individual's assets. It's a punishment and it's imposed based solely on the facts of the crime. So, while she was told that she might have to pay fines and fees, she could have fairly assumed that neither would be imposed because she's an individual of limited means. But if she didn't comply with the restitution order and the state sought to enforce it, such as by through contempt, at that point, the trial court would have to examine whether she had an ability to pay, correct? In other words, whether it's at the front end or the back end, if she's unable to pay, that will be considered. I'm not sure whether the restitution, because it is a punishment and it is part of her sentence, would have been taken off because she didn't have the ability to pay for it. What I will say is that in this case, fines and fees were actually waived because she wasn't able to pay. So, the court did know that she was unable to pay, yet they still impose that restitution upon her. They didn't impose fines and fees. They did impose restitution. On the other hand, they didn't tell her about the possibility of restitution. They did tell her about the possibility of fines and fees. So, there is prejudice here because the only thing that she is subject to paying at this moment was something that she was not admonished about pursuant to Rule 402. All right. Proceed. Yes. If there are no other questions, I would just again say that the insufficient admonishments were prejudicial here because they resulted in Ms. Dillon entering a guilty plea without being fully informed of its consequences and that, under People v. Snyder, does require remand for trial. Moving on. Counsel, I was a trial judge for 12 years. I never, ever saw a trial court or a local state's attorney attempt to follow through on restitution after a defendant had spent two and a half years in prison. They don't get brought back to court to pay restitution. Now, that was my anecdotal experience in a fairly good-sized circuit with a fairly busy court. What's the prejudice if she never has to pay it? Well, I don't think there's any way to tell from this record whether she's not going to be made to pay it. And again, I think very good evidence that she is going to be made to pay it. What is the evidence that she's going to be made to pay it? Well, I would just again state that because she's an indigent individual, the court knew that. The court considered that in waiving the fines and fees, but still did order the restitution. That indicates that she will have to pay the restitution that was ordered. So you're unwilling to consider the practicalities of it? I'm not unwilling to consider the practicalities. What's important to me is that she wasn't made aware of this possibility. This is what is part of her sentence. And I don't going to pay the restitution that is part of her sentence at this juncture. Let me clarify something else to make sure that I understood that. Was the plea agreement discussed with the court before she pled guilty? Not as far as I know. And again, under Supreme Court Rule 402, it's not whether it was discussed with the court. It's whether she was admonished of all of the consequences of her guilty plea prior to pleading guilty. And those consequences, according to our Supreme Court and People v. Snyder, includes the possibility of paying restitution. She was not admonished. So it's an unknowing plea. I think that the reason Rule 402 exists is to ensure that we don't have these questions, that we know that when an individual pleads guilty and gives up her right to trial, she's doing so with a full awareness of what the consequences of this plea would be. And she's not doing so in this case because, or we don't know that she's doing so in this case, because the court didn't give admonishments properly within that Supreme Court rule. Nice. And just to clarify, you said the court waived fines and fees. Would it be more accurate to say that the court didn't impose a fine, but waived the assessments? I believe so, yes. Okay. If there are no other questions, I'd move on to argument two, which is if this court does not remand for trial or for a new motion to withdraw a plea hearing, we would alternatively ask that the court vacate Ms. Dillon's conviction for unlawful use of a debit card under the one-act-one-crime doctrine. The only conduct Ms. Dillon was charged with was using the complainant's authority, withdrawing $1,800. This is one single act and only one single conviction can arise from it. Excuse me. Good afternoon, counsel. There were two counts here though, were there not? Count one was financial exploitation of an elderly person and count two, unlawful use of a debit card, correct? That's correct. And so here, didn't the conviction on count one have to rest on defendant's conduct with respect to count two, in other words, the use of the debit card? One depended on the other, correct? I think that what's really important here is looking at the factual basis that the state gave for the plea at the hearing. And you can see through that factual basis that the only conduct that Ms. Dillon was convicted of was withdrawing $1,800 with the debit card. That's one single act and that's why it can't substantiate two convictions. It's true that in the financial exploitation count, there's the kind of external factor of the ongoing relationship Ms. Dillon had with the complainant, but that's not a discrete act for the purposes of the doctrine. I would just point to People v. King, which is, of course, the leading Illinois Supreme Court case on One Act, One Crime, which states that there need to be two separate physical acts and that an act is an overt or outward manifestation. We don't have that here. The amorphous concept of a trusting relationship between Ms. Dillon and the complainant is not an act under the statute. Again, there's one factual basis that includes only one single act, which is use of the debit card without authority. That one act can't substantiate two separate convictions. Well, now you're talking about a factual basis here. What if we apply the legal construct of the abstract elements approach to both of these charges? If we do that, neither one, as I see it, is a lesser included offense of the other. And so, how does that, I mean, there's no violation of the One Act, One Crime rule if we do that, correct? Your Honor, our position is that you don't move on to the abstract elements approach or you don't have to determine whether one offense is a lesser included offense of another when you only have one single act. I think what a useful case that we cited in the brief is People v. Harvey, where there was a conviction for possession of a stolen motor vehicle and then another conviction for possession of several stolen vehicles within a one-year time period. A time period was not an act. So, they found that because the only thing that the defendant did, their only conduct was possessing a stolen motor vehicle, it was one act and it couldn't substantiate two separate crimes. The same here. A relationship with the victim is not a distinct act. So, there's only one thing that Miss Dillon did and it can't be used to form the basis of two separate convictions. Thank you. Go ahead. Any other questions, Your Honor? Not for me at this point. Do you have another argument at this point to cover? Another issue? I'll just stand on the briefs in terms of the sentencing issue if there are no questions on it. All right. Justice Connacht, any further questions? No, thank you. Justice Doherty? No questions. Thank you. Mr. Chow? Good afternoon, Your Honors. Good afternoon. May it please the Court. I'm Yutai Chow, 711 students on behalf of State's Attorney Appellate Prosecutor. The Circuit Court of Levenston County has correctly convicted and sentenced the defendant. Therefore, we ask this Court to affirm for specifically three reasons. First, the trial has substantially complied with the Supreme Court rule of order in the punishment of the defendant. Second, defendant's convictions do not violate one act, one crime rule. And the third, the trial court did not consider any improper factors in sentencing defendant. All claims of defendant are waived and therefore revealed under plan error appeal. To comply with the statute, as also mentioned by opposing counsel, is to make sure that defendant do not receive a more onerous sentencing than she was told she would receive. Here in this case, defendant was told that she would be liable to pay a fine up to $25,000. She was eventually ordered to pay $1,500 in restitution. It is not more onerous than the $25,000 that she was told she would receive. As cited by Justice Daugherty, in People v. Padaro, that the second district admitted that even though fine fee and cost are different from the restitution, it is indistinguishable in the context in assessing the trial court compliance with Supreme Court rule of and fines are different because the court would have had to consider defendant's ability to pay restitution before imposing it. Yes, Your Honor, but as mentioned that a court would, I mean, imposing the restitution different from fine fee or cost, if the restitution was later enforced, the court would still consider that ability to pay instead of that part entirely unconsidered. And also, I noticed that my opposing counsel mentioned People v. Snyder, and I would like to say to you that Paragraph 20 verbatim of Snyder to you, it is that in quote, in the present case, it is undisputed that the trial court failed to substantially comply with Supreme Court rule 402, in that it failed to admonishment. In People v. Snyder, that point is undisputed. So only question asked in Snyder is about the remedy of failure to comply with the Supreme Court rule 402. Therefore, People v. Snyder... Do you contest that there was not substantial compliance? In this case, I don't think the defendant can contest even the trial court did not substantially comply with the Supreme Court rule 402 in giving defendants a notice. And even if there is any error on the page three of the record, the defense counsel has made it clear that the amount of the restitution is set by agreement. And there, the defendant, it's contesting that she do not know that she is going to pay restitution. It is unreasonable. And if she contested, if she brought this issue up in the trial court, it would be reflected in the record that defendant do have notice. But in this case, defendant did not bring it in the trial court. This is what the forfeiture rule, what the plenary rule is targeted at, where the defendant did not contest the issue in the trial court, but later bring it on appeal. To the second point, defendant's convictions, two convictions do not violate one act, one crime rule. Even though the Supreme Court has made it clear that a person can be guilty of two offenses when a common act is part of both offenses are... Where are the two different physical acts here? Count one is financial exploitation. That depends on count two, the use of the debit card. So where do we get two physical acts? Yes, Your Honor. In this case, there is two physical act. First is that the defendant became a caregiver of the victim, Teresa Ballward, an elderly lady, and then stood in her trust to use her debit card. So there's two first... Wait, let's stop on the first one. So you're saying that the trust is not an external factor like opposing counsel argued, and that her Yes, Your Honor. In some degree, even though a trust can be built in some way as a relationship, as something static, not outward manifestation, but the active building of that trust, as someone becomes someone's caregiver. There's no allegation and there's no proffer at sentencing that suggested that defendant did something to generate that trust as perhaps part of a scheme to get the money. It just alleges that relationship. And in People versus Coats, the Supreme Court said a felon's status as a felon doesn't constitute a physical act. This seems like a status of being somebody in whom the victim reposed trust. Yes, Your Honor. There is no allegation, but I would still bring to the plain error review, because if the defendant has brought it up, it has been made clear in the pre-sentencing investigation report that defendants actively seeking that job of caregiver and later became the caregiver of the victim here in this case, Teresa Bauer. If the defendant brought it up in the trial court, it would be reflected in the record that the state made the right charge. And the charging instrument actually reflected some extent of it, saying that the defendant stands in trust of the victim here in this case. It is the factual basis that does not reflect this fact. And if the defendant has brought it up in the trial court, the state's attorney could well revise the factual basis and make it perfect for the one act, one crime rule, instead of here being argued on appeal that these two convictions violate one act, one crime rule. Therefore, as I mentioned, there is two steps of defendant's commission of these two offenses. First is that defendant actively seeking that job and later became a caregiver of the victim here in this case. And second, using of her debit card. And also using of debit card is not monolithic. It is taking, I believe, in the pre-sentencing investigation, it is $1,800 taking in form of multiple $100 withdrawal. There is multiple swiping of that debit card. And if defendant mentioned it below, it would be no way to contend that it's on appeal that defendant only have one act in these two convictions. Therefore, the first step of the one act, one crime rule analysis is to determine it's not carved from the very same physical act. And it is actually not. The second step of the one act, one crime rule analysis is to determine whether one crime is a lesser crime of the other. In this step, court generally looking to the statue of those convictions. And here the two convictions are financial exploitation of elderly person and unlawful use of debit card. Not all unlawful use of debit card were committed against an elderly person, as well as not all financial exploitation of an elderly person is committed through using debit card. Therefore, there is no one act, one crime rule violation in this case. The third point that the trial card did not consider any improper factors in sentencing the defendant. Here, even though there's pointed remarks in the record, those remarks are detached from their context. I would set two examples. Counsel, I would interrupt you for one minute here. In looking at the record here and what the trial court said during sentencing. The trial court, it seems to me made clear that the defendant statement in allocution, and the defendants arrogant manner, were the factors that the court relied on heavily as persuasive to determine that the defendant should be sentenced to five years in the Department of Corrections instead of three years in the Department of Corrections. So what I'd like to ask is, how were these appropriate factors and aggravation? And how did they not evidence personal disdain for the defendant? Yes, Your Honor, as you mentioned, the trial court in the sentencing hearing heard defendants allocution, as well as victim impact statement. It has been first time made clear to Judge Boknet that defendant took money from the victim, the money she set aside for her own funeral. And after even this victim impact statement, the defendant still insists on her own innocence. The trial court properly considered under the factor as a complete lack of remorse. And the lack of remorse is held as a proper factor in people we download by this district. Therefore, the trial court did not consider the any improper bias and prejudice. And I would like to say to you what counts as improper bias and prejudice. In people we Fisher said in my brief, it is the trial court made a source bounty research about the defendant, as well as commented on the defendant's limited mental capacity. Those are not allowed, but those did not happen here. What happens here is that Judge Boknet, even though she used some pointed remarks, she used those remarks in consideration of all proper factors. When you say she used those in consideration, there were factors in aggravation that she did refer to, as well as I believe deterrence. How are these, that was the basis of my question, how are these other things that she said, proper factors in aggravation? Where do they fall under the factors in aggravation? The remarks cited by the defendants falls, basically falls to many of the factors, but it's still Judge Boknet's considered proper factor in this case. And also according to people we frame, where some serious and even very pointed remarks happened, the first district held that the court looked to the entire record instead of field words in assessing the trial court's abuse of discretion in sentencing. As well as here, when we took a look of the entire record, we can find that there is not actually something that's as improper bias and prejudice against the defendant. Counsel, one other question on this point, where do we draw the line between a pointed remark and a biased remark? Yes, Your Honor, this line, according to my research, is rather formless because in the people with Fisher, it is not because those comments pointed remarks that the trial court demonstrate bias and prejudice. It is because the trial court have those bias and prejudice, it make those remarks. Those remarks should not be the sole basis to determine a trial court's bias and prejudice. We look to what trial court did, like in people with Fisher, a source bounty research, it is not permissible. But here, there is no outside research made by the trial judge, as well as there is no certain comments as to the defendant's limited mental capacity. All the trial judge discussed is the pre-sentencing investigation about what happened in this case and what happened in that sentencing hearing. Thank you for your answer. Therefore, thank you, Your Honor. Therefore, based on the aforementioned three reasons, we ask this court to affirm. Thank you. Any further questions, Justice Connick or Justice Doherty? Thank you. Attorney Sloan, you have rebuttal. Yes, just briefly, Your Honors. I would just point out in terms of issue one, that Ms. Dillon certainly did receive a more onerous sentence than she was advised of. Yes, she was advised of fines and fees, but again, she was not made to pay fines and fees. She was only made to pay restitution, which is what she was not advised of. The case law suggests sort of a mathematical approach to this, though, that if you are of which you're not advised below that amount, it shows that you were not prejudiced. I think certainly cases that are pre-Snyder, like something like a Patero, do suggest that, but I think it's also questionable whether that's good law anymore after we have the Illinois Supreme Court speaking in Snyder and saying that your trial court is not complying with 402 when it's not advising an individual of restitution. I would also just to respond to counsel's argument that in Snyder it was undisputed that there was no mention of restitution. Here, although there is a mention of restitution at sentencing, it's certainly undisputed that there was no mention of restitution at the plea hearing itself. That's what's important for 402. Again, the reason 402 exists is to ensure that we have defendants who are making knowing involuntary guilty pleas. As for argument two, in terms of argument one, while this is not preserved, there's Illinois Supreme Court case law that does state that improper 402 admonishments is first pronged plain error or alternatively it's ineffective assistance of counsel for filing a motion to withdraw a plea and not including this issue in that motion. Now moving on to argument two, I would just point out the problem, counsel argues that an element or a reason that there are two acts here is because one is that Ms. Dillon was a caregiver. I think what's really important is not only it's not an element of the crime. If you're looking at how Ms. Dillon's charged, the financial exploitation of an elderly person count is again standing in the position of confidence or trust with an elderly person. It's a status. It's not an act. You can say you can go back to trial and have additional facts. You're not going to change the charging instrument. She just wanted to point out that there is evidence in the record that the trial court is explicitly stating that the reason for the longer sentence that she thought she was going to do was because of how she found the victims or the Ms. Dillon's demeanor. So she said that ordinarily she goes through the aggravating and mitigating factors methodically. She didn't. She was having trouble doing that in this case because she found Ms. Dillon to be so grotesque, so disrespectful. She specifically said prior to the hearing, she was going to impose a three-year sentence, and then she changed it to five. Well, nothing really changed from the time of the sentencing hearing from the time. Except something did change. At the hearing, the defendant expressed no remorse according to the judge's determination and attempted to continue to state that she wasn't guilty. That's a change. You don't know what the defendant is going to say at the sentencing hearing, but that's the way they're going to talk or make reference to the deceased victim looking down from heaven. Those things didn't happen before. They happened during the hearing. Of course, Your Honor. I think the point I was trying to make was that the trial court didn't learn anything about the actual facts of the crime or Dillon's criminal history. These are all pieces of information she would have known prior to the sentencing hearing. Lack of remorse is a proper factor for a judge. Yes. Lack of remorse is one proper factor. It's our position that the one additional factor of lack of remorse isn't enough to nearly double a defendant's sentence, and that's what she did do, and she explicitly stated that she was doing so because of what happened at the sentencing hearing. That's improper. It's one factor. It shouldn't be the only factor. I see that I've run out of time. I would just again briefly ask that Ms. Dillon can withdraw her plea and go to trial or one of her convictions be reversed or her sentence be adjusted. Thank you. Thank you. Thank you very much, counsel, for your arguments this afternoon. The court will take the matter under advisement and render a decision in due course. The proceedings this afternoon are ended. Thank you.